**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

```
ANSYS, INC.,                    )
                                )
            Plaintiff,          )    Civil Action No. 06-1569
                                )
       v.                       )    Judge Lancaster
                                )    Magistrate Judge Caiazza
LMS INTERNATIONAL,              )
                                )
            Defendant.          )
```

### MAGISTRATE JUDGE'S AMENDED REPORT AND RECOMMENDATION

The Report and Recommendation ("R&R") entered on March 28, 2007 (Doc. 22) is hereby amended as follows.

The prior R&R erroneously presumed that "the Court" referenced in Article 14 of the ICC Rules could be interpreted to mean the District Court here. *See id.* at 7-9. This is not the case, as Article 1.1 makes clear that "the Court" refers to the ICC's International Court of Arbitration. *See id.*

This does not cause the undersigned to substantially modify the prior recommendations. Indeed, a further examination of the Rules leads the parties back to Paris France.

Article 4.1 governs "Request[s] for Arbitration," and it states:

> A party wishing to have recourse to arbitration under these Rules shall submit its Request for Arbitration . . . to the Secretariat, which shall notify the Claimant and Respondent of the receipt of the Request and the date of such receipt.

*Id.*

Article 1.5 states:  "The Secretariat of the Court . . . under the direction of its Secretary General . . . <u>shall have its seat at the headquarters of the ICC</u>."  *Id.* (emphasis added). The ICC is headquartered in Paris France.  *See* http://www.iccwbo. org/collection34/folder258/id4093/printpage.html?newsxsl=4&articl exsl=5 ("Foreword" to ICC Rules); *see also* http://www.iccwbo.org/ id107/index.html (contact information for Secretariat in Paris).

To initiate the arbitration process, ANSYS or LMS is required to file a Request for Arbitration in France, a signatory to the Convention.  *See* discussion *supra*.  Under Rule 4, the Request closely parallels the filing of a complaint in civil court, *see* Articles 4.2-4.3,[1] and Article 5 requires an "Answer" and permits "Counterclaims."  *Id.*  In essence, the ICC Rules incorporated into the parties' Agreement dictate that the first crucial steps of arbitration must take place in a signatory country, and the court may compel arbitration by requiring the filing of a Request for Arbitration there.

These conclusions are largely consistent with the theoretical underpinnings of the prior Report, and they continue to serve the strong policy considerations endorsed by the Third

---

[1]  *Id.* ("[t]he date on which the Request is received . . . shall, for all purposes, be deemed . . . the date of the commencement of the arbitral proceedings," and Request shall contain among other things "the name in full, description and address of each of the parties," "a description of the nature and circumstances of the dispute giving rise to the claim(s)," and relief sought).

Circuit Court and in <u>Jain</u>.  *See* March 28th R&R at 4 (noting "strong federal policy" favoring arbitration, which "carries special force when international commerce is involved") *and id.* at 6, 8 (where parties clearly have agreed to arbitrate, law should not be interpreted to render court "helpless to enforce the arbitration agreement"; ordering arbitration "better comports with the language of the Convention itself," which states court "shall" compel arbitration absent showing that agreement "is null and void, inoperative, or incapable of being performed").

The recommended ruling, moreover, remains consistent with 9 U.S.C. § 206, which authorizes the court to order "that arbitration be held in accordance with the agreement at any place therein provided for."  *Compare id. with* Appendix A to Agreement at ¶ 3 (requiring arbitration in "neutral forum," consistent with ICC Rules).  Under the unique circumstances presented here, and limiting its ruling to the facts of this case, the District Court should compel arbitration as contemplated above.

The undersigned is cognizant that legal minds may differ regarding some of these conclusions.  For example, the District Court cannot absolutely guarantee that post-pleading arbitration proceedings will take place in a signatory country.  This is much more of a theoretical, academic concern than one based in reality.  The actual probability that this case will proceed to

-3-

arbitration in a non-signatory country is infinitesimal,

at best.[2]

---

[2]  Although countries cannot be "members" of the ICC, *per se*, they can form "national committees" that have input in "shap[ing] the organization's policies." *See* http://www.iccwbo.org/id100/index.html. All of the countries to have formed a national committee are also signatories to the Convention, save Togo and Chinese Taipei (presuming it is not a signatory through China's entry). *Compare id.* (providing links and directory identifying all countries with national committees) *with* http://www.uncitral.org/uncitral/en/uncitral_texts/ arbitration/NYConvention_status.html (confirming entry into Convention for European countries, including Austria in June 1975, Belgium November 1975, Croatia October 1991, Cyprus March 1981, Czech Republic January 1993, Denmark March 1973, Finland April 1962, France September 1959, Georgia August 1994, Germany September 1961, Greece October 1962, Hungary June 1962, Iceland April 2002, Ireland August 1981, Italy May 1969, Lithuania June 1995, Luxembourg December 1983, Monaco August 1982, Netherlands July 1964, Norway June 1961, Poland January 1962, Portugal January 1995, Romania December 1961, Russia November 1960, Serbia April 1992, Slovakia January 1993, Slovenia June 1991, Spain August 1977, Sweden April 1972, Switzerland August 1965, Turkey September 1992, Ukraine January 1961, United Kingdom September 1992; the Americas, Argentina June 1989, Brazil September 2002, Canada August 1986, Chile December 1975, Colombia December 1979, Costa Rica January 1988, Cuba March 1975, Dominican Republic July 2002, Ecuador April 1962, El Salvador May 1998, Guatemala June 1984, Mexico July 1971, Panama January 1985, Peru October 1988, United States December 1970, Uruguay June 1983, Venezuela May 1995; the Middle East, Bahrain July 1988, Iran January 2002, Israel June 1959, Jordan February 1980, Kuwait July 1978, Lebanon November 1998, Qatar March 2003, Saudi Arabia July 1994, Syria June 1959, UAE November 2006; Africa, Algeria May 1989, Burkina Faso June 1987, Cameroon May 1988, Egypt June 1959, Ghana July 1968, Madagascar October 1962, Morocco June 1959, Nigeria June 1970, Senegal January 1995, South Africa August 1976, Tanzania January 1965, Tunisia October 1967; Asia Pacific, Bangladesh August 1992, China April 1987, Hong Kong, China July 1997, India October 1960, Indonesia January 1982, Japan September 1961, Korea May 1973, Malaysia February 1986, Mongolia January 1995, Nepal June 1998, New Zealand April 1983 Pakistan October 2005, Philippines October 1967, Singapore November 1986, Sri Lanka July 1962, Thailand March 1960; and Australia June 1975).  At the risk of stating the obvious, it is highly improbable that arbitration will be held in a non-signatory country with no national committee.  *Cf.* http://www.iccwbo.org/ id100/index.html ("[i]n countries where a national committee has yet to be formed, companies can join [the] ICC individually by becoming a direct member").

It also may be argued that the language in Section 206, allowing arbitration in "any place . . . provided for [in the agreement]," mandates the denial of a motion to compel when no specific location (as opposed to a "neutral forum" under ICC Rules) is identified.  As noted above, however, Section 206 and the cases applying it should be read consistently with the strong federal policy favoring the arbitration of international commercial disputes and the parties' clear intent to arbitrate.

In the end, the Plaintiff's Motion presents an either/or choice:  either compel arbitration abroad, or find the court powerless to enforce a clearly agreed upon arbitration provision.  While arguments can be made in support of either decision, the undersigned respectfully submits that compelling arbitration will yield a result more in harmony with the policy considerations enumerated above.

For all of these reasons, along with those stated in the March 28th R&R (which is incorporated by reference here to the extent not inconsistent), it is recommended that the District Court enter an order compelling arbitration, to be initiated by the filing of a Request for Arbitration with the Secretariat of the ICC in Paris France.[3]

---

[3]  Of course, the parties remain free to agree upon the place of arbitration, consistent with the instructions in the previous R&R. *See id.* at 9 n.3.

-5-

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4 (B) of the Local Rules for Magistrates, objections to this report and recommendation are due by April 16, 2007.  Responses to objections are due by April 26, 2007.  The prior objections and response deadlines are vacated.


March 30, 2007

Francis X. Caiazza
U.S. Magistrate Judge


cc (via email):

Stacey L. Jarrell, Esq.
James W. Bentz, Esq.
James R. Warnot, Esq.
Martin S. Bloor, Esq.